IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 24, 2019 Session

**STATE OF TENNESSEE v. REGINALD BERNARD WILSON**

**Appeal from the Criminal Court for Knox County
No. 107953   Bobby R. McGee, Judge**

_____

**No. E2018-01684-CCA-R3-CD**

_____

A Knox County jury convicted the Defendant, Reginald Bernard Wilson, of resisting arrest, and the trial court sentenced the Defendant to ninety days of unsupervised probation.  On appeal, the Defendant asserts that the trial court erred when it denied his request for a jury instruction on self-defense and that the evidence is insufficient to support his conviction for resisting arrest.  After review, we conclude that the trial court erred when it failed to instruct the jury as to self-defense.  We, therefore, reverse the judgment of conviction and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT H. MONTGOMERY, JR., JJ., joined.

Mark E. Stephens, District Public Defender, and Jonathan Harwell, Assistant Public Defender, Knoxville, Tennessee, for the appellant, Reginald Bernard Wilson.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Charme Allen, District Attorney General; and Molly T. Martin and Jordan H. Murray, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION
I. Facts**

This case arises from the police investigation of a reported burglary in the area where the Defendant resides.  As a result of a police officer approaching the Defendant and the subsequent interaction, a Knox County grand jury indicted the Defendant for aggravated assault and two counts of resisting arrest.  At trial, the parties presented the

following evidence: Knoxville Police Department ("KPD") Officer Tyler Wiggins testified that he was working a night shift on October 19, 2015, when he heard a dispatch about a potential burglary in progress at a residence on East Moody Avenue in Knox County, Tennessee. Officer Wiggins testified that he generally used Google Maps, a mapping service, to determine the exact house or business to which he has been dispatched. He noted that "for some reason" Google Maps could not pinpoint the exact address he had been given in this case. He would later learn that this was because the address initially given to him by the dispatcher was not a valid address.

Officer Wiggins testified that he and his partner, Officer William Romanini, agreed to meet at an intersection near the address and walk to the residence on foot. Officer Wiggins parked his vehicle in front of an apartment complex in a "central location for the crime [he] believed was happening." Officer Wiggins exited his patrol car to put on his jacket when he noticed the Defendant, who was parked improperly with no headlights, blocking parking spaces, and with his vehicle "running." Officer Wiggins thought this was suspicious and consistent with his experience with "getaway vehicles." He said that, based upon the active call about an ongoing burglary, he approached the vehicle. He held a flashlight in his hand and briefly shone the light in the vehicle to determine whether someone was inside before pointing the flashlight toward the ground again. He demonstrated the brevity of the use of his flashlight for the jury.

Officer Wiggins testified that he was approximately five or six feet from the vehicle and directly in front of it when the headlights illuminated. The vehicle then backed up very quickly, possibly thirty or forty feet, startling the officer. Officer Wiggins repeatedly issued verbal commands for the driver to stop. Officer Wiggins recalled that "the [D]efendant then beg[a]n to drive forward very, very quickly and swerve[d] at an angle toward [Officer Wiggins] and then away." As the vehicle advanced toward Officer Wiggins, he "side stepped," so the vehicle missed hitting him by approximately a foot. Officer Wiggins testified that he was "terrified" and believed the Defendant was "going to kill [him]."

Officer Wiggins testified that the vehicle stopped and began "backing up" "aggressively." Officer Wiggins, still holding his flashlight, began hitting the car window in an attempt to get the Defendant's attention and possibly to break the window to better see the suspect for a suspect description. When Officer Wiggins hit the window, the vehicle came to a stop, and Officer Wiggins opened the driver's side door. The compartment light illuminated, and Officer Wiggins identified himself as a police officer and stated that he was investigating a burglary in the area. Officer Wiggins described the Defendant as irate and acting "very erratic." The Defendant reached for the right side of the steering wheel where the gearshift was located. Believing the Defendant was about to drive away, potentially dragging the officer, Officer Wiggins ordered the Defendant out

of the vehicle. The Defendant did not comply, so Officer Wiggins physically removed the Defendant from the vehicle. The Defendant continued to resist despite Officer Wiggins's verbal commands to "stop."

Officer Wiggins testified that he and the Defendant were both standing in "the V" of the open driver's side door with the Defendant facing the vehicle. The Defendant began "elbowing" Officer Wiggins in the chest with his left elbow, followed by swinging his right arm around to hit the officer. Officer Wiggins recognized that the Defendant had escalated from resisting to actively trying to hurt the officer. He was concerned because he had been unable to conduct a proper pat down of the Defendant for weapons. Officer Wiggins then unsuccessfully initiated "pain compliance," which consisted of several closed fist strikes to the Defendant's head, to try to contain the Defendant. He explained that he was holding his radio in his right hand at the time because he had been trying to communicate with dispatch about the situation. He did not release the radio before striking the Defendant because he did not want to lose the ability to communicate with dispatch.

Officer Wiggins testified that he had control of only one of the Defendant's arms when Officer Romanini arrived. Officer Romanini took control of the Defendant's free arm, while Officer Wiggins handcuffed the Defendant. Even so, the Defendant still actively resisted, preventing the officers from doing a proper search. The officers were only able to check the Defendant's waistband for weapons before taking him to the patrol car.

Officer Wiggins testified that the Defendant continued to actively resist and was verbally aggressive. Officer Romanini held the Defendant while Officer Wiggins attempted to search the Defendant. As Officer Wiggins searched the Defendant, the Defendant spit blood in the officer's mouth. Officer Wiggins stated that this caused him great concern due to the possibility of blood borne pathogens. Officer Wiggins finished his search of the Defendant and placed him in the back of his patrol car. Officer Wiggins confirmed that he had initiated both the microphone worn on his uniform and the video system in the patrol car during this interaction. The recordings were played for the jury.

KPD Lieutenant Jerry Armstrong testified about an interview with the Defendant on October 21, 2015, two days after the Defendant's interaction with Officer Wiggins. Lieutenant Armstrong photographed the Defendant, and those photographs were published to the jury. Lieutenant Armstrong did not observe a black eye or "busted lip," and the photograph of the Defendant is consistent with Lieutenant Armstrong's observations. He did, however, see and photograph a laceration with three staples on the right side of the Defendant's head and the Defendant's chipped tooth.

The defense produced medical records from October 19, 2015, indicating that the Defendant had sustained a laceration to the head with "moderate" pain and a chipped tooth. The documents described the Defendant as "[e]motional, calm, cooperative."

The Defendant testified that he lived in an apartment on East Moody Avenue. The Defendant was born and raised in Knoxville, Tennessee and attended Rule High School. Thereafter he served in the Navy from 1989 to 1993. The Defendant attended Knoxville Institute of Hair Design and currently worked as a barber at Salon Knoxville. The Defendant recalled the events leading up to his interaction with Officer Wiggins. He stated that he had worked that day and gone home to eat a sandwich before going to see his mother. The Defendant got into his car, turned it on to turn on the heat, and then plugged his phone in and started "tinkering with it." He said it was dark outside and cold. As he "tinker[ed]" with his phone, he saw a bright light coming from outside his vehicle that startled him. The bright light was moving toward him, but he was unable to see the source of the light.

The Defendant testified that he was frightened by the light, so he put his car in reverse and backed away from the light. He estimated that he backed up approximately two feet when the "[p]erson with the flashlight started hitting [his] windshield." The Defendant denied hearing any verbal commands due to the music he was playing but parked his vehicle and opened the door to see who was banging on his windshield. The Defendant said that he stood up out of the car and, upon seeing that the person holding the light was a police officer, he stepped out from his car, closed the car door, and put his hands in the air to show the officer that he was not resisting.

The Defendant testified that he and Officer Wiggins were standing face to face approximately "[o]ne step" apart. He said, "[Officer Wiggins] call[ed] me a burglary suspect and start[ed] hitting me with the flashlight." The Defendant estimated that the officer hit him approximately three times and that he felt "a burning sensation" and then felt blood "start dripping." At some point, the officer hit the Defendant's hand, which the Defendant still had held in the air, and the flashlight fell to the ground. According to the Defendant, the officer said, "You mother ***ker" and then hit the Defendant with his fist five more times. As the officer hit the Defendant repeatedly on both sides of his face, the Defendant kept repeating that he was a resident and not a burglar. The Defendant recalled that he turned so that his back was to the officer and placed his hands behind his back. At this point, another officer arrived, grabbed one of the Defendant's arms while Officer Wiggins held the Defendant's other arm, and the two officers walked the Defendant "down to the grass hill."

The Defendant testified that, when they arrived at the patrol car, Officer Romanini grabbed the back of his head and pushed him forward. The Defendant's head went

- 4 -

forward and hit "the top half of the car," chipping the Defendant's tooth. Officer Wiggins then accused the Defendant of spitting blood in the officer's mouth, and the Defendant responded that he did not have any blood in his mouth. The Defendant said that he felt both "mad" and "scared." The officers then handcuffed him, and the Defendant asked to be placed in the back of the patrol car. The Defendant said that neither officer ever asked him for proof of his residence.

On cross-examination, the Defendant clarified that he was "completely blind[ed]" by the officer's flashlight and that he was "about to back up," but the officer began hitting the windshield. The Defendant confirmed that he stopped the car, exited the vehicle and, when he saw a police officer, he put his hands in the air. The State played the audio recording and asked the Defendant about his statement "You f**king people can't tell me what to do. Are you serious?" The Defendant responded, "Never said that." The Defendant agreed that, on the recording, Officer Wiggins could be heard repeatedly ordering the Defendant to stop; however, the Defendant maintained that his hands were in the air and he was cooperating the entire time.

The Defendant reiterated that Officer Wiggins told him that he was a burglary suspect. The State played a portion of the recording during which Officer Wiggins stated, "We have a possible break in over here and you're trying to back away from me." The Defendant confirmed that this was the statement he was referring to as the officer accused him of being a burglar. The Defendant denied trying to "jerk away" from the officer. The Defendant confirmed that Officer Wiggins struck the Defendant with his fist five times on both sides of his face. He further agreed that the photographs taken two days after the incident showed no injuries other than the laceration and chipped tooth. The Defendant maintained that he cooperated throughout the incident and that Officer Wiggins was "trying to provoke" him "the whole time."

At the close of proof, the parties discussed the jury instructions, and the trial court addressed the Defendant's request for a jury charge on self-defense. In denying the request, the trial court made the following findings:

> [T]he [D]efendant has denied any kind of an assault on the officer. He has testified that he didn't touch him. In fact he just raised his hands and didn't do anything when he alleges that the officer attacked and assaulted him.
>
> So if he does not acknowledge the assault, then the defense of self-defense is not appropriate.

After deliberation, the jury convicted the Defendant of resisting arrest by preventing or obstructing an arrest and acquitted the Defendant as to the aggravated

assault charge and the resisting arrest with use of a deadly weapon charge. It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that the trial court erred when it denied his request for a jury instruction on self-defense and that the evidence is insufficient to support his conviction for resisting arrest. The State responds that the trial court properly denied the Defendant's request for a jury instruction on self-defense, and the evidence is sufficient to support the conviction for resisting arrest.

## A. Jury Instruction

The Defendant asserts that the trial court erred when it denied his request for a self-defense instruction. He argues that due to the sudden approach, physical attack, and verbal insults, he was reasonably afraid of what could happen next and entitled to act in self-defense to try and protect himself against the officers' excessive force. The State responds that the evidence at trial did not fairly raise the issue of self-defense and, therefore, the trial court properly declined to give the instruction.

A trial court has the duty, in criminal cases, to fully instruct the jury on the general principles of law relevant to the issues raised by the evidence. *See State v. Burns*, 6 S.W.3d 453, 464 (Tenn. 1999); *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986); *State v. Elder*, 982 S.W.2d 871, 876 (Tenn. Crim. App. 1998). "Nothing short of a 'clear and distinct exposition of the law' satisfies a defendant's constitutional right to trial by jury." *State v. Phipps*, 883 S.W.2d 138, 150 (Tenn. Crim. App. 1994) (quoting *State v. McAfee*, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987) (quoting *Strady v. State*, 45 Tenn. 300, 307 (1868))). In other words, the court must instruct the jury on those principles closely and openly connected with the facts before the court, which are necessary for the jury's understanding of the case. *Elder*, 982 S.W.2d at 876. Because questions of the propriety of jury instructions are mixed questions of law and fact, our standard of review here is *de novo*, with no presumption of correctness. *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001); *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

A defendant is only entitled to a defense jury instruction where the issue is fairly raised by the evidence. T.C.A. § 39-11-203(c) (2014). In determining whether a defense is fairly raised by the evidence, a court considers "the evidence in the light most favorable to the defendant, including drawing all reasonable inferences flowing from that evidence." *State v. Bult*, 989 S.W.2d 730, 733 (Tenn. Crim. App. 1998) (quoting *State v. Shropshire*, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993)). "This is because it would

be improper for a court to withhold a defense from the jury's consideration because of judicial questioning of any witness credibility." *Id*.

In Tennessee, self-defense is limited to situations where force is justified. With regard to self-defense in this case, the pertinent part of the Tennessee Code provides as follows:

> The threat or use of force against another is not justified . . . [t]o resist a halt at a roadblock, arrest, search, or stop and frisk that the person using force knows is being made by a law enforcement officer, unless:
>
> (A) The law enforcement officer uses or attempts to use greater force than necessary to make the arrest, search, stop and frisk, or halt; and
>
> (B) The person using force reasonably believes that the force is immediately necessary to protect against the law enforcement officer's use or attempted use of greater force than necessary.

T.C.A. § 39-11-611(e)(3) (2018).

In this case, the trial court refused the Defendant's request for an instruction, observing that it was the Defendant's theory that he did not strike the officers and had done nothing to provoke the officer. Our supreme court, however, has observed that "[t]he evidence, not the parties, controls whether an instruction is required." *State v. Morgan Johnson*, No. W2003-02349-CCA-R3-CD, 2004 WL 2237988, at *8 (Tenn. Crim. App. Oct. 1, 2004), *no perm. app. filed* (citing *State v. Allen*, 69 S.W.3d 181, 188 (Tenn. 2002)).

Officer Wiggins testified to the circumstances leading up to his interaction with the Defendant, and the Defendant's evasive, uncooperative, physically assaultive, and hostile response to Officer Wiggins. The Defendant testified that Officer Wiggins's attack was unprovoked and that he was cooperative during the duration of their interaction. The Defendant was seated in his vehicle in front of his residence at the time the officer approached him and pulled him out of the car. He claimed that he was initially unaware that the person approaching with a bright light and banging on his car was a police officer. Once he recognized that it was a police officer, he attempted to comply but was frightened and angered by the police conduct. As a result of the interaction, the Defendant sustained a chipped tooth and laceration requiring three staples. In our view, there was some evidence from which the jury could have determined that the officers utilized greater force than was necessary to place the Defendant under arrest. When the proof "tends to show" self-defense, it is error to fail to give the instruction. *Souey v. State*, 81 Tenn. 472 (1884). The jury is free to accredit any

portion of each witnesses' testimony in reaching its conclusion. Thus, it was within the province of the jury to conclude that the Defendant's use of force was only to protect himself against police officers who were using more force than was necessary to effectuate the arrest. Under these circumstances, an instruction on self-defense was warranted, and the trial court erred by refusing to charge the jury on the issue.

When the error is of constitutional dimensions, as in this instance, reversal is required unless the error is harmless beyond a reasonable doubt. *See State v. Harris*, 989 S.W.2d 307, 314-15 (Tenn. 1999). In this case, the trial court refused to include an instruction on self-defense to either charge. The omission of an instruction on self-defense deprived the Defendant of the right to have the jury determine a defense that was fairly raised by the proof. Moreover, the failure to instruct on the issue of self-defense lessened the State's burden of proof, as it removed the requirement that the State prove beyond a reasonable doubt that the Defendant did not act in self-defense. The jury's verdict of acquittal on the aggravated assault count and the resisting assault by use of deadly weapon count indicates that it did not wholly accredit the testimony of the State's witnesses. Therefore, we conclude that the error was not harmless beyond a reasonable doubt. Because the jury was not given the benefit of the instruction and denied the opportunity to evaluate the merit of the Defendant's self-defense claim, we must reverse the conviction and order a new trial.

In case of further appellate review, we now consider the Defendant's remaining issue.

## B. Sufficiency of the Evidence

The Defendant challenges the sufficiency of the evidence against him. He argues that his response was "justified in response to the officers' unprofessional and violent behavior." The State maintains that the evidence is sufficient to support the Defendant's conviction for resisting arrest beyond a reasonable doubt. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by

circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

Tennessee Code Annotated section 39-16-602(a) provides that it is a criminal offense for "a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer . . . from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another."

The evidence, viewed in the light most favorable to the State, proves that the Defendant was illegally parked at night with his car running in the area of a potential burglary. The officer dispatched to investigate observed the Defendant's vehicle, and the circumstances indicated that the vehicle might be a "getaway car." When the officer approached to further investigate, the headlights of the vehicle came on and the vehicle rapidly reversed approximately thirty feet. The Defendant then drove toward the officer before veering off. When the officer hit the windshield repeatedly with his flashlight, the Defendant stopped the vehicle. The officer opened the car door and announced he was a police officer investigating a burglary. The Defendant responded angrily and reached for the gear shift. The officer ordered the Defendant out of the car and, when he failed to comply, the officer physically removed the Defendant. The officer pushed the Defendant toward the car with his back facing the officer. From this position the Defendant elbowed the officer and attempted to swing back and hit the officer with his left arm despite the officer's repeated commands to "stop." On the audio recording, the Defendant can be heard cursing, yelling, and refusing to comply with the officer's request. The Defendant stated, "You f**king people can't tell me what to do." The officer's voice can also be heard repeatedly ordering the Defendant to "stop." Ultimately the officer subdued the Defendant to determine if he was involved in the burglary. The Defendant continued to actively resist the officers, preventing the officers from conducting a safety search for weapons. Even after he was placed in handcuffs, the Defendant resisted and spit in Officer Wiggins's mouth as he attempted to search the Defendant for weapons. Based upon this evidence, a jury could reasonably conclude that the Defendant intentionally prevented Officer Wiggins from effecting a stop, search, and subsequent arrest by using force against the officer.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we conclude that the trial court committed reversible error when it failed to instruct the jury on self-defense, which was fairly raised by the proof. Therefore, we reverse the trial court's judgment and remand the case for a new trial.

_____

ROBERT W. WEDEMEYER, JUDGE